MARJORIE K. CHUSED, Plaintiff v. ANDREW M. CHUSED, Defendant

No. COA98-91

(Filed 15 December 1998)

### 1. Child Support, Custody, and Visitation— support—earning capacity—findings required

The trial court erred in ruling on a motion to reduce child support by using defendant's earning capacity rather than the Guidelines in determining his obligation when there was no finding that defendant acted in bad faith by deliberately depressing his income.

### 2. Child Support, Custody, and Visitation— support—amount outside Guidelines—no request by either party

The trial court did not err in a child support action by setting support outside the Guidelines without a request from either party where both parties presented without objection evidence of the needs of the children and the parties' relative abilities to provide support.

### 3. Child Support, Custody, and Visitation— support—contempt for unilateral reduction—means to comply

The trial court did not err in a child support action by finding defendant in contempt for unilaterally reducing his court ordered payments where defendant contended that the record did not establish that he had the means or ability to comply but the court

---

ordered that he pay $14,575 and the record reveals that he had an estate of at least $900,000.

## 4. Child Support, Custody, and Visitation— support—attorney fee—findings

The trial court erred in a child support action by awarding attorney's fees to plaintiff without entering findings on the issue of whether payment of the fees by plaintiff would unreasonably deplete her estate.

Appeal by defendant from order filed 16 July 1997 by Judge David A. Leech in Pitt County District Court. Heard in the Court of Appeals 20 October 1998.

*J. Randal Hunter, for plaintiff appellee.*

*White & Allen, P.A., by David J. Fillippeli, Jr., for defendant appellant.*

GREENE, Judge.

Andrew Chused (Defendant) appeals from the trial court's order reducing his child support obligation; finding him in civil contempt for failing to pay child support; and ordering him to pay the attorney's fees of Marjorie Chused (Plaintiff).

Plaintiff and Defendant were married (1974), separated (1991), and divorced (1993). During their marriage, they had three children, born 8 February 1978, 3 October 1979, and 20 April 1982.

On 23 July 1992, a consent order was signed by the parties resolving issues of alimony, child custody, child support, and attorney's fees. This order directed Defendant to pay child support in the initial sum of $4,000.00 per month until the oldest child reached age eighteen or completed high school; $3,200.00 monthly until the middle child reached age eighteen or completed high school; and $2,500.00 per month until the youngest child reached age eighteen or completed high school. At the time of the consent decree, Defendant was earning $142,000.00 annually. In October of 1995, Defendant was terminated involuntarily from his employment and, because of a severance package, continued to receive his full salary through July of 1996. Defendant began practicing as a certified public accountant in early 1997.

On 17 July 1996, Defendant filed for a reduction in his child support obligation claiming that he had no income from employment. In September of 1996, Defendant unilaterally reduced his child support payment to $1,050.00 per month.

Evidence at the hearing of Defendant's modification request revealed that, as of the date of the hearing, Defendant had an estate worth approximately $975,000.00 (consisting primarily of stock and real estate) and Plaintiff had an estate valuing approximately $380,000.00 (consisting primarily of stock and real estate). The evidence further revealed that Defendant was not yet earning any income from his new accounting business, his current occupation, but was receiving approximately $8,000.00 annually from his investments. Plaintiff was employed and earning $22,464.00 annually. Each of the three children had respective trusts for their benefit valued at approximately $300,000.00. At the time of the hearing, the oldest child was in college.

The trial court signed an order on 9 July 1997 reducing Defendant's child support obligation from $3,200.00 to $2,375.00, commencing 1 September 1996; adjudicating Defendant in civil contempt of court; and ordering him to pay $14,575.00 to purge himself of this contempt. In support of the order, the trial court entered pertinent findings of fact and conclusions of law. In summary, the trial court found: (1) Defendant has the "present capacity to earn no less than $55,000.00"; (2) Defendant owns assets "having a net value exceeding $900,000.00"; (3) Plaintiff is employed and earning "$12.00 per hour and works approximately 36 hours per week"; (4) the increased needs of the children will be offset by the income from their trust; (5) "the needs of the children are at least $2,375.00 per month in order to maintain them in the style of living to which they [have become] accustomed"; (6) in "light of . . . [Defendant's] assets, income, and earning capacity, and considering the needs of the children and [Plaintiff's] income, the court finds that [Defendant] is entitled to a present reduction in his child support obligation in the amount of $825.00"; (7) the new amount of child support "is consistent with the North Carolina Child Support Guidelines"; (8) Defendant has, since September 1996, reduced the amount of child support he has paid to $1,050.00; (9) Defendant has had the ability to pay the sum due of $2,375.00 since 1 September 1996; (10) Defendant has "willfully and intentionally failed and refused to comply" with the terms of the consent decree; (11) Defendant "has the ability to pay the arrearage [of $14,575.00] existing at the time this order is signed . . . within 60

CHUSED v. CHUSED

[131 N.C. App. 668 (1998)]

days therefrom"; (12) Plaintiff has been represented by Randall Hunter in these proceedings and the reasonable value of his services is no less than $3,651.00; and (13) Plaintiff "does not have the ability to pay these [attorney's] fees" and Defendant "does have the ability to pay [them] within 60 days from the entry of this order." The trial court concluded that: (1) there had been a substantial change in circumstances; (2) Defendant had willfully and intentionally violated the consent decree; (3) Defendant was in civil contempt of court; and (4) Plaintiff was entitled to an award of attorney's fees in the amount of $3,651.00.

The issues are whether: (I) earning capacity may be considered in setting child support absent a finding of bad faith; (II) the trial court may deviate from the North Carolina Child Support Guidelines Schedule only upon a timely request from either party; (III) there is evidence to support the trial court's finding that Defendant had the ability to pay $14,575.00; and (IV) the trial court properly considered the relative estates of the parties in awarding attorney's fees.

I

[1] In this case, Defendant seeks a reduction of his child support obligation pursuant to N.C. Gen. Stat. § 50-13.7. This statute requires that he first show that there has been a "changed circumstance" since the entry of the consent decree. N.C.G.S. § 50-13.7 (1995). It is not disputed in this case that the reduction in Defendant's income constituted a "changed circumstance." *See McGee v. McGee*, 118 N.C. App. 19, 27, 453 S.E.2d 531, 536, *disc. review denied*, 340 N.C. 359, 458 S.E.2d 189 (1995) (involuntary decrease in obligor's income satisfies the change in circumstances requirement of section 50-13.7). Once the change of circumstance has been shown, a new child support amount is to be determined consistent with the North Carolina Child Support Guidelines. *Id.* at 26, 453 S.E.2d at 535-36. The support is to be determined based on the parties' actual income. *Ellis v. Ellis*, 126 N.C. App. 362, 364, 485 S.E.2d 82, 83 (1997). If, however, there is a showing that a party has acted "in bad faith by deliberately depressing [his] income or otherwise disregarding the obligation to pay child support," that party's earning capacity can be used to determine his child support obligation. *Schroader v. Schroader*, 120 N.C. App. 790, 794, 463 S.E.2d 790, 792 (1995).

In this case, the trial court used Defendant's earning capacity in determining his child support obligation. There is no finding in this record that the trial court determined that Defendant was "acting in

CHUSED v. CHUSED

[131 N.C. App. 668 (1998)]

bad faith by deliberately depressing [his] income." Because the trial court erred, the child support award is reversed, and that matter is remanded to that court for redetermination of the child support amount.

## II

**[2]** Upon findings that "the application of the [G]uidelines would not meet or would exceed the reasonable needs of the child considering the relative ability of each parent to provide support," a trial court may vary from the Guidelines in setting a child support amount, but only if a timely request (10 days written notice) is made by either party, or if evidence "relating to the reasonable needs of the child for support and the relative ability of each parent to provide support" is presented without objection. N.C.G.S. § 50-13.4(c) (Supp. 1997); *Browne v. Browne*, 101 N.C. App. 617, 624, 400 S.E.2d 736, 740-41 (1991).

In this case, although the trial court indicated that it set child support "consistent" with the Guidelines, it is undisputed that the Guidelines Schedule was not used in setting the child support amount. Instead, the trial court attempted to set support utilizing the needs of the children and the relative abilities of the parents. Defendant contends this was error because neither party requested a variance from the Guidelines. Indeed this record does not reflect such a request, but the record does show that both parties presented, without objection, evidence of the needs of the children and the parties' relative abilities to provide support. Accordingly, the trial court did not err in setting support outside the Guidelines Schedule.

## III

**[3]** Defendant unilaterally reduced his child support payments in September of 1996. A supporting parent "has no authority to unilaterally modify the amount of the [court ordered] child support payment. The supporting parent must [first] apply to the trial court for modification." *Craig v. Craig*, 103 N.C. App. 615, 618, 406 S.E.2d 656, 658 (1991). The trial court then has the authority to enter a modification of court ordered child support, retroactive to the filing of the petition of modification. *Mackins v. Mackins*, 114 N.C. App. 538, 546-47, 442 S.E.2d 352, 357, *disc. review denied*, 337 N.C. 694, 448 S.E.2d 527 (1994); N.C.G.S. § 50-13.10 (1995) (child support is vested and normally may not be modified retroactively).

CHUSED v. CHUSED

[131 N.C. App. 668 (1998)]

If a person unilaterally reduces his court ordered child support payments, he subjects himself to contempt. Before a person may be held in civil contempt of court, there must be evidence that he "is able to comply with the order or is able to take reasonable measures that would enable him to comply with the order." N.C.G.S. § 5A-21(a)(3) (1986); *Blair v. Blair*, 8 N.C. App. 61, 63, 173 S.E.2d 513, 514 (1970).

Defendant contends the evidence in this record does not establish that he had the means or ability to comply with the order of the trial court that he pay $14,575.00. We disagree. The record reveals that Defendant has an estate of at least $900,000.00 and that evidence clearly shows his ability to comply or take reasonable measures to comply with the order of the trial court. Accordingly, the trial court committed no error in its order of contempt.

IV

**[4]** Before attorney's fees can be taxed in an action for child support, the trial court must find as fact that the party seeking the award: (1) is an interested party acting in good faith; (2) has insufficient means to defray the expense of the suit; and (3) the party ordered to pay counsel fees has refused to provide adequate support. N.C.G.S. § 50-13.6 (1995); *Taylor v. Taylor*, 343 N.C. 50, 53-54, 468 S.E.2d 33, 35, *reh'g denied*, 343 N.C. 517, 472 S.E.2d 25 (1996).

In determining whether a party has insufficient means to defray the cost of the suit, the trial court may compare the relative estates of the parties in some instances. *Van Every v. McGuire*, 348 N.C. 58, 60-62, 497 S.E.2d 689, 690-92 (1998). For example, although a party may have assets sufficient to pay his attorney, if such payment would deplete his estate unreasonably, the trial court is free to compare his estate with the other party's estate in determining if he has insufficient means to defray the expenses of the suit. *Id.*

In this case, Plaintiff has an estate of approximately $380,000.00 and Defendant has an estate of about $975,000.00. The attorney's fees in question equal $3,651.00. Clearly there are assets from which Plaintiff can pay her attorney's fees. Would that payment, however, unreasonably deplete her estate? That is for the trial court to determine, and in this case, the trial court entered no findings addressing that issue. *See id.* (suggesting that the trial court should make findings as to whether payment would deplete a party's estate). Accordingly, the attorney's fees award is reversed and remanded to the trial court for the entry of a new order on attorney's fees.

STAR FIN. CORP. v. HOWARD NANCE CO.

[131 N.C. App. 674 (1998)]

Affirmed in part; reversed in part and remanded.

Judges WALKER and SMITH concur.