RAMONA MASON, Plaintiff v. JESSE ERWIN, Defendant

No. COA02-338

(Filed 15 April 2003)

**1. Child Support, Custody, and Visitation— support—modification—earnings capacity rule**

The trial court did not abuse its discretion by modifying the parties' child support agreement under N.C.G.S. § 50-13.7(a) and by increasing defendant father's child support obligation, because: (1) the trial court properly used the earnings capacity rule when defendant, a fifty-two-year-old able-bodied worker with no physical disabilities retired and voluntarily reduced his income in deliberate disregard of his obligation to provide reasonable support for his minor child; and (2) defendant failed to persuade the trial court that he could no longer perform that job based on age, disability, illness or any factor beyond defendant's choosing.

MASON v. ERWIN

[157 N.C. App. 284 (2003)]

**2. Costs— attorney fees—child support action**

The trial court did not abuse its discretion in a child support case by awarding plaintiff mother attorney fees, because: (1) defendant failed to present evidence to rebut plaintiff's evidence that she was a party acting in good faith; and (2) defendant was paying an inadequate amount of support on the date the motion for modification of child support was filed.

**3. Child Support, Custody, and Visitation— support—reasonable needs of child**

The trial court did not err in a child support case by finding on remand that the total reasonable monthly needs for the child were $1,626, excluding health care and child care costs, and the trial court was not required to find specific detailed facts with regard to the child's reasonable expenses because the trial court awarded the presumptive amount of support to plaintiff according to defendant's imputed income.

**4. Child Support, Custody, and Visitation— support—retroactive award**

The trial court did not err in a child support case by awarding retroactive child support to plaintiff mother, because: (1) the modification of a child support order takes effect on the date the petition for modification was filed; and (2) contrary to defendant's assertion, the trial court did not order payment of a specific amount in back child support that defendant was required to pay.

**5. Child Support, Custody, and Visitation— support—modification—credit**

The trial court did not err in a child support case by allegedly failing to properly credit defendant father for child support payments made between the filing of the modification petition and the date of the entry of the trial court's amended child support order, because: (1) defendant presented no evidence to the trial court of these alleged payments before the order on remand was issued; and (2) the issue of alleged overpayment is not properly before the Court of Appeals since the trial court has not yet considered the issue of defendant's possible overpayment.

Appeal by defendant from order entered 26 October 2001 by Judge Jane V. Harper in Mecklenburg County District Court. Heard in the Court of Appeals 10 February 2003.

*Timothy M. Stokes for plaintiff-appellee.*

*Hoover, Williams & Exum, P.A., by Donnie Hoover, for defendant-appellant.*

EAGLES, Chief Judge.

Jesse Erwin ("defendant") appeals from a district court order increasing his monthly child support obligation. Defendant asserts several arguments on appeal, including: (1) that the trial court erred in awarding an increase in child support based on defendant's imputed income; (2) that the trial court erroneously awarded attorney fees to plaintiff; (3) that the trial court incorrectly found that the child's reasonable monthly needs had increased; (4) that the award of retroactive child support was erroneous; and (5) that the trial court failed to credit defendant for overpayment of child support. After careful review of the record, briefs, and arguments of counsel, we affirm.

Defendant is the biological father of a minor child named Joy, who was born 26 June 1991. Plaintiff, Ramona Mason, is the biological mother and has custody of Joy. On 19 September 1991, plaintiff commenced an action for child support against defendant. Defendant signed a voluntary support agreement on 9 March 1992. In this agreement, defendant acknowledged his paternity of Joy and stated that he would pay $54 each week as child support.

In October 1995, defendant's wife won a prize in the Canadian lottery valued at approximately $4.4 million in American currency. Mrs. Erwin invested most of her winnings in a revocable trust. She pays all of the household expenses for herself and defendant from the income received from the trust. Defendant retired on 31 December 1995; he was 52 years old and had over 25 years of service with UPS. Before his retirement from UPS, defendant earned $19.38 per hour or approximately $3,350 each month. After his retirement, defendant received a pension of $1,500 per month.

On 20 March 1996, defendant and plaintiff changed the amount of child support by signing a second voluntary child support agreement which increased defendant's child support obligation to $300 per month. The agreement was incorporated into a consent order on 15 April 1996. Defendant paid $300 monthly according to the terms of the 1996 order. On 16 September 1998, plaintiff filed a motion to increase child support.

After hearing evidence regarding the child's needs and testimony on defendant's financial status, the trial court issued an order increasing defendant's child support obligation to $922 per month. The trial court based its order upon its imputation of income to defendant in the amount of $5,000 each month. Defendant appealed the order to this Court, which reversed the portion of the order imputing income to defendant and remanded the cause for additional factual findings on defendant's income. *See Mason v. Erwin*, 146 N.C. App. 110, 553 S.E.2d 247 (2001) (unpublished). This Court also reversed the award of attorney fees and the award of retroactive child support. *Id.*

On remand, the trial court issued a second order without hearing further evidence. The amended order increased defendant's child support responsibility to $622 per month and awarded retroactive child support. Defendant was required to provide health insurance for the minor child and to pay 77 percent of her uninsured health care expenses. The trial court also ordered defendant to pay plaintiff's attorney fees. From this order, defendant appeals.

[1] Defendant argues that the trial court abused its discretion on remand by modifying the child support agreement and increasing his child support obligation. Defendant contends that the trial court incorrectly imputed income to him and again based the increase in child support on that imputed income. We disagree.

"Child support orders entered by a trial court are accorded substantial deference by appellate courts and our review is limited to a determination of whether there was a clear abuse of discretion." *Leary v. Leary*, 152 N.C. App. 438, 441, 567 S.E.2d 834, 837 (2002) (citing *White v. White*, 312 N.C. 770, 324 S.E.2d 829 (1985)). Defendant argues that the trial court abused its discretion by awarding plaintiff an increase in child support. When this action was filed in 1998, plaintiff and defendant were operating under a consent order which required defendant to pay plaintiff $300 each month for Joy's support. Our General Assembly set the standard for adjusting a preexisting child support award as follows: "An order of a court of this State for support of a minor child may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party . . . ." G.S. § 50-13.7(a) (2001). The definition of "changed circumstances" has been delineated by this Court:

A *voluntary* decrease in a parent's income, even if substantial, does not constitute a changed circumstance which alone can jus-

tify a modification of a child support award. A *voluntary* and sub-stantial decrease in a parent's income can constitute a changed circumstance only if accompanied by a substantial decrease in the needs of the child. In determining whether the party has sus-tained a decrease in income, the party's actual earnings are to be used by the trial court if the voluntary decrease was in good faith. If the voluntary decrease in income is in bad faith, the party's earning capacity is to be used by the trial court in determining whether there has in fact been a decrease in income. The burden of showing good faith rests with the party seeking a reduction in the child support award.

*Mittendorff v. Mittendorff*, 133 N.C. App. 343, 344, 515 S.E.2d 464, 466 1999) (emphasis in original) (citations omitted). Where a parent seeks a reduction in his child support obligation, the trial court must find a voluntary reduction in a parent's income combined with an increase or decrease in the child's needs in order to find "changed circumstances" that justify a child support modification. *See King v. King*, 153 N.C. App. 181, 568 S.E.2d 864 (2002); *Wolf v. Wolf*, 151 N.C. App. 523, 566 S.E.2d 516 (2002); *Mittendorff*, 133 N.C. App. 343, 515 S.E.2d 464 (1999); *Burnett v. Wheeler*, 133 N.C. App. 316, 515 S.E.2d 480 (1999); *Chused v. Chused*, 131 N.C. App. 668, 508 S.E.2d 559 (1998).

Here, it is undisputed that defendant retired from UPS with over 25 years of service with that company. Furthermore, both parties agree that defendant retired within three months after his wife began collecting her lottery winnings. As part of defendant's retirement, he surrendered a salary of approximately $3,350 per month in exchange for a monthly pension worth $1,500. Neither party contests the fact that the reduction in defendant's income results from a voluntary action by defendant. However, the parties strongly contest whether defendant's retirement qualifies as an action taken in bad faith. The North Carolina Child Support Guidelines state:

If either parent is voluntarily unemployed or underemployed to the extent that the parent cannot provide a minimum level of sup-port for himself or herself and his or her children when he or she is physically and mentally capable of doing so, and the court finds that the parent's voluntary unemployment or underemployment is the result of a parent's bad faith or deliberate suppression of income to avoid or minimize his or her child support obligation, child support may be calculated based on the parent's potential, rather than actual, income.

N.C. Child Support Guidelines, 2003 Ann. R. (N.C.) 33, 35. The primary issue is "whether a party is motivated by a desire to avoid his reasonable support obligations. To apply the earnings capacity rule, the trial court must have sufficient evidence of the proscribed intent." *Wolf*, 151 N.C. App. at 527, 566 S.E.2d at 519. The earnings capacity rule can be applied if the evidence presented shows that a party has disregarded its parental obligations by:

> (1) failing to exercise his reasonable capacity to earn, (2) deliberately avoiding his family's financial responsibilities, (3) acting in deliberate disregard for his support obligations, (4) refusing to seek or to accept gainful employment, (5) willfully refusing to secure or take a job, (6) deliberately not applying himself to his business, (7) intentionally depressing his income to an artificial low, or (8) intentionally leaving his employment to go into another business.

*Wolf*, 151 N.C. App. at 526-27, 566 S.E.2d at 518-19 (citing *Bowes v. Bowes*, 287 N.C. 163, 214 S.E.2d 40 (1975)). The situations enumerated in *Wolf* are specific types of bad faith that justify the trial court's use of imputed income or the "earnings capacity" rule.

Here, the trial court made sufficient findings of fact to support its conclusion that defendant retired and voluntarily reduced his income "in deliberate disregard of his obligation to provide reasonable support for Joy." The trial court stated that it found defendant's testimony about the reasons for his retirement to be unpersuasive. Defendant cited health concerns and accidents on the job as the reasons for his retirement. However, sufficient evidence existed to rebut defendant's testimony about health problems, namely his own promise to retire if he ever won the lottery. In addition, the trial court found that defendant's actual income of $1,500 per month was mostly unencumbered income, since defendant effectively had no monthly expenses or bills for which he was solely responsible. Despite this readily available pension income, the evidence tended to show that defendant was reluctant about his responsibility to provide support for Joy.

Defendant knew of extensive and expensive dental work that Joy needed in 1995, but refused to pay for that dental care. At the time plaintiff informed defendant of the needed dental care, defendant was still employed full-time. The trial court found that defendant willingly increased his child support payments from $52 per week to $300 per month in March 1996. However, the trial court also noted that

according to defendant's actual income of $1,500 and the Child Support Guidelines, defendant should have been presumptively paying at least $380 per month. Also, the trial court found that defendant claimed that he could not provide insurance for Joy in March 1996 but did apply for insurance in October 1998 after the motion to modify child support was filed. We view all this evidence in the context of defendant's voluntary decision to retire though he was an able-bodied, 52 year old worker with no physical disabilities who was capable of earning sufficient funds to provide for his daughter. Accordingly, we hold that the trial court did not abuse its discretion by computing defendant's child support obligation according to the earnings capacity rule.

The Child Support Guidelines direct that "[t]he amount of potential income imputed to a parent must be based on the parent's employment potential and probable earnings level based on the parent's recent work history, occupational qualifications and prevailing job opportunities and earning levels in the community." N.C. Child Support Guidelines, 2003 Ann. R. (N.C.) 33, 35. Here, the trial court imputed a monthly income of $3,359 to defendant. Defendant earned this amount monthly in his last job prior to retirement, based upon calculations of a forty-hour work week and defendant's earnings of $19.38 per hour. Defendant failed to persuade the trial court that he could no longer perform that job because of age, disability, illness or any factor beyond defendant's choosing. Therefore, the trial court did not abuse its discretion when it imputed income to defendant in the amount of $3,359 per month. Accordingly, this assignment of error is overruled.

[2] Defendant further argues that the trial court erred in awarding plaintiff attorney fees. Defendant states that the trial court's findings of fact are not sufficient to support the award of attorney fees to plaintiff. Defendant contends that plaintiff has failed to show that defendant refused to provide adequate support. We disagree.

The standard for the award of attorney fees in a child support action is as follows:

In an action or proceeding for the custody or support, or both, of a minor child . . . the court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit. Before ordering payment of a fee in a support action, the court must find as a fact that the party ordered to furnish

support has refused to provide support which is adequate under the circumstances existing at the time of the institution of the action or proceeding . . . .

G.S. § 50-13.6 (2001). Here, the trial court specifically found as a fact that (1) plaintiff was "a party acting in good faith to obtain reasonable support for her daughter"; (2) that plaintiff lacked sufficient means to pay her attorney fees; and (3) that defendant "refused to provide support which was reasonable under the circumstances existing in September 1998 . . . ." These findings of fact are sufficient to support the trial court's conclusions of law. Also, the findings of fact are supported by evidence in the record and by other findings of fact. For example, the finding that plaintiff was unable to afford her attorney fees was buttressed by the additional finding that she had debts totaling over $3,700 and it took plaintiff six months to save the money necessary to pay her attorney's retainer. Defendant failed to present evidence to rebut plaintiff's evidence that she was a party acting in good faith. Finally, the trial court found that defendant was paying an inadequate amount of support on the date the motion for modification of child support was filed. To support this finding, the trial court made the following finding of fact:

> 20. Applying the Child Support Guidelines to father's "actual" income of $1,500 per month, his obligation would be $380 per month, plus 60% of [uninsured medical, dental and prescription] expenses.

Defendant was not paying the presumptive amount of child support based upon his actual income. When the trial court imputed a higher income to defendant, his child support obligation also increased. Defendant's adherence to the consent order does not prevent a modification of that order or his payment of attorney fees. The parties maintain the right to contract child support arrangements. However, once that contract is adopted as a consent order, the trial court may modify the terms of the order according to G.S. § 50-13.7. *In re Custody of Mason*, 13 N.C. App. 334, 185 S.E.2d 433 (1971), *cert. denied*, 280 N.C. 495, 186 S.E.2d 513 (1972). Therefore, the trial court's findings and conclusions that defendant paid inadequate child support provides justification for the trial court acting within its discretion to order defendant to pay appropriate attorney fees. Accordingly, this assignment of error is overruled.

[3] Defendant next assigns error to the trial court's findings on remand that the total reasonable monthly needs for the child were

$1,626, excluding health care and child care costs. Defendant argues that the trial court erred by making insufficient findings of fact to deviate from the presumptive child support award outlined by the North Carolina Child Support Guidelines. The trial court in this case awarded child support according to the North Carolina Child Support Guidelines. The trial court was not required to find specific, detailed facts with regard to the child's reasonable expenses because it awarded the presumptive amount of support to plaintiff according to defendant's imputed income. This assignment of error is overruled.

[4] Defendant assigns error to the trial court's award of retroactive child support to plaintiff. Defendant argues that no basis exists for an increase in child support and the award of retroactive support was incorrectly calculated. We disagree.

Since we have already concluded that the increased award of child support was correct, defendant's argument here has no merit. It is well settled that the modification of a child support order takes effect on the date the petition for modification was filed. *See Mackins v. Mackins*, 114 N.C. App. 538, 442 S.E.2d 352, *disc. rev. denied*, 337 N.C. 694, 448 S.E.2d 527 (1994). Here, plaintiff filed the modification petition on 16 September 1998. The trial court concluded as a matter of law that the increase in child support was effective on 16 September 1998. The trial court did not explicitly state a specific amount that defendant owed in retroactive support from the entry of its order on 26 October 2001 back to the petition filing date on 16 September 1998. Defendant's assignment of error to the trial court's inclusion of a specific amount of owed child support is without merit since the trial court did not order payment of a specific amount in back child support that defendant was to required to pay.

[5] Defendant also argues that the trial court did not properly credit him for child support payments made between the filing of the modification petition and the date of the entry of the trial court's amended child support order. Defendant contends that the trial court failed to give him credit for the amounts he paid as a result of the original November 1999 child support award by the trial court. According to defendant, he paid at least $9,699 in child support arrears and $7,600 in attorney fees as a result of the November 1999 order that was vacated by this Court. However, defendant presented no evidence of these payments to the trial court before the order on remand was issued. Both parties and the trial court agreed that the order on remand could be issued without further presentation of evidence. The trial court, in its final child support order, has retained jurisdic-

tion over this matter specifically to make adjustments based on previous overpayments. Therefore, the issue of alleged overpayment is not properly before this Court because the trial court has not yet considered the issue of defendant's possible overpayment. The final assignment of error fails.

For the reasons stated, the trial court's order awarding child support and attorney fees to plaintiff is affirmed.

Affirmed.

Judges MARTIN and GEER concur.