ANDREWS v. ANDREWS

[217 N.C. App. 154 (2011)]

JOHN ANDREWS Plaintiff v. BECKY ANDREWS, Defendant

No. COA11-433

(Filed 15 November 2011)

**Child Custody and Support—support—changing jobs—not in good faith**

Plaintiff's sincere religious beliefs did not equate to good faith pertaining to his financial obligations to his children where he left his engineering job to start a church and stated that his only consideration was obedience to Jesus Christ. The trial court erred by concluding otherwise.

Appeal by defendant from order entered 8 November 2010 by Judge Anna E. Worley in Wake County District Court. Heard in the Court of Appeals 28 September 2011.

*Marshall & Taylor, P.C., by Travis R. Taylor, for plaintiff-appellee.*

*Kilpatrick Townsend & Stockton LLP, by E. Danielle Thompson Williams and James J. Hefferan, Jr., for defendant-appellant.*

HUNTER, Robert C., Judge.

Becky Andrews (now Wood) ("defendant") appeals from the trial court's order modifying the child support obligation of her former husband, John Andrews ("plaintiff"). After careful review, we reverse the trial court's order.

**Background**

Plaintiff and defendant were married in 1994 and have two children resulting from their marriage. In 2001, the parties separated and, on 6 November 2002 *nunc pro tunc* to 1 July 2002, entered into a consent order granting primary physical custody of the children to defendant and secondary custody, with visitation rights, to plaintiff. The consent order also required plaintiff to pay $1,496.75 per month in child support, and to maintain health, dental, and vision insurance for the benefit of their minor children, including payment of the insurance premiums and all health care expenses not covered or reimbursed by their insurance policies.

Plaintiff's child support obligation under the consent order was calculated in accordance with the North Carolina Child Support Guide-

ANDREWS v. ANDREWS

[217 N.C. App. 154 (2011)]

lines (the "Guidelines"). At the time of the consent order, in 2002, plaintiff was employed as an engineer and earned approximately $105,000 annually. In 2004, plaintiff changed jobs, accepting a position as an engineer at EMC Corporation ("EMC") where his salary increased to approximately $172,000 in 2009. EMC also provided plaintiff with benefits such as health insurance.

In March 2010, plaintiff voluntarily resigned from his position at EMC, and did so without having secured other employment. In his exit interview at EMC, plaintiff stated that he was resigning in order to follow Jesus Christ. At the time of his resignation, plaintiff intended to start a church, but the church was not yet incorporated and there was no paid position to accept. Consequently, the prospective members of the church made a "love offering" of $1,000 to sustain plaintiff until payment of his salary could begin.

In mid-May, New Beginnings Chapel was established in Raleigh, North Carolina ("New Beginnings") and plaintiff accepted a position with the church as the senior pastor. Plaintiff's annual salary at New Beginnings is $52,800. New Beginnings does not provide plaintiff with health insurance. Consequently, plaintiff's premiums for health and dental insurance have approximately doubled while his income has been reduced by approximately 70%.

On 14 May 2010, plaintiff filed a motion to modify his child support obligation. Plaintiff's motion alleged there had been a substantial change in circumstances warranting a modification of his child support obligation under the parties' 2002 consent order. Plaintiff alleged the substantial change in circumstances on the basis that more than three years had passed since entry of the parties' consent order, and that there would be a 15% deviation between the amount of child support due under the consent order and the amount that would result from application of the Guidelines to the parties' current earnings.

Defendant moved to dismiss plaintiff's motion for failure to state a claim for which relief could be granted, pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). Specifically, defendant argued plaintiff failed to allege a substantial change in circumstances that warranted modification of the child support order.

At a hearing on the motions, plaintiff testified that he could no longer maintain his child support obligation as required under the parties' consent order. When plaintiff was asked if he considered his child support obligation when he quit his job at EMC, he replied, "When I

considered leaving EMC my consideration was following Christ and that was all, my obedience to him."

The trial court denied defendant's motion to dismiss and entered an order reducing plaintiff's child support obligation from $1,496.75 per month to $873.75 per month. In its order, the trial court found, *inter alia*, that despite plaintiff's voluntary resignation, there was "no evidence of bad faith or an intentional disregard to his family and child support obligations." The trial court concluded, as a matter of law: that there was sufficient evidence to establish a presumption of a substantial change in circumstances based on the parties' current incomes and that the presumption warranted a modification to the existing child support order; that no request for a deviation from the Guidelines had been made and no evidence was offered of circumstances which could justify deviation; and that despite plaintiff's voluntary resignation from his job at EMC, plaintiff did so in good faith and without a disregard to his child support obligations. Defendant appeals from this order.

## Discussion

Initially, we note defendant's frequent citation to unpublished opinions of this Court. With limited exceptions, the use of unpublished opinions is disfavored. Our Rules of Appellate Procedure permit such use to establish claim preclusion, issue preclusion, or the law of the case, or when "there is no published opinion that would serve as well." N.C. R. App. 30(e)(3) (2011). In the present case, the extensive use of unpublished opinions was not warranted and we have not considered those opinions in our analysis.

Defendant argues the trial court erred in modifying plaintiff's child support obligation despite evidence that plaintiff voluntarily quit his job without giving consideration to how he would meet his child support obligation required by the parties' consent order. We agree.

A trial court's award of child support will not be disturbed on appeal unless it is shown the decision was the result of an abuse of discretion. *Evans v. Craddock*, 61 N.C. App. 438, 440-41, 300 S.E.2d 908, 910 (1983). If the decision is supported by competent evidence, the decision will not be disturbed even if the record contains conflicting evidence. *Id.* Absent an abuse of discretion, however, "an error in law arising from the misapprehension of the appropriate legal standard by the trial court is nonetheless reviewable on appeal." *Anuforo v. Dennie*, 119 N.C. App. 359, 361, 458 S.E.2d 523, 525 (1995).

A child support order entered by a court of this State "may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances." N.C. Gen. Stat. § 50-13.7(a) (2009). Our case law has interpreted this standard to require a showing of a "substantial change in circumstances affecting the welfare of the child." *Askew v. Askew*, 119 N.C. App. 242, 244, 458 S.E.2d 217, 219 (1995). Plaintiff sought a modification of his child support obligation based on the presumption that a substantial change in circumstances had occurred because the parties' consent order was more than three years old and the amount of the child support obligation under that order would be at least 15% greater than an award calculated under the Guidelines applied to the parties' current earnings. *See* 2008 Ann. R. N.C. 52 (providing that the modification of a child support order may be based on the presumption of a substantial change in circumstances and providing the requirements to establish the presumption); *Garrison v. Connor*, 122 N.C. App. 702, 705-06, 471 S.E.2d 644, 646-47 (explaining the intent behind the creation of a presumption of a substantial change in circumstances and validating its inclusion in the Guidelines by the Conference of Chief District Judges), *disc. rev. denied*, 344 N.C. 436, 476 S.E.2d 116 (1996).

However, our statutes do not require the trial court to adhere to the Guidelines if the court determines that application of the Guidelines would not meet or would exceed the reasonable needs of the child, or would be unjust or inappropriate. N.C. Gen. Stat. § 50-13.4(c) (2009). If a trial court determines that the party seeking the reduction in child support has acted in a manner that evidences a disregard for the child support obligation, the court may refuse to modify the support obligation utilizing the party's actual income. *Wolf v. Wolf*, 151 N.C. App. 523, 526, 566 S.E.2d 516, 518-19 (2002). Rather, the trial court may base the support obligation on the party's earning capacity. *Id.*

The 2006 revised version of the Guidelines, in effect at the time of the trial court's order, provides that

[i]f the court finds that a parent's voluntary unemployment or underemployment is the result of the parent's *bad faith* or deliberate suppression of income *to avoid or minimize his or her child support obligation*, child support may be based on the parent's potential, rather than actual, income.

2008 Ann. R. N.C. 49 (emphasis added). Thus, as this Court has held, in order to impute income to a party when calculating a child support obligation, the trial court must find the party's actions resulting in

reduced income were made in "bad faith" to avoid the child support obligation, or with "a sufficient degree of indifference" to the same. *McKyer v. McKyer*, 179 N.C. App. 132, 146, 632 S.E.2d 828, 836 (2006), *disc. rev. denied*, 361 N.C. 356, 646 S.E.2d 115 (2007).

We note that our case law has interchangeably referred to a party's disregard for their child support obligation as a showing of "bad faith," *Cook v. Cook*, 159 N.C. App. 657, 661, 583 S.E.2d 696, 698 (2003), or an absence of "good faith," *Sharpe v. Nobles*, 127 N.C. App. 705, 708, 493 S.E.2d 288, 290 (1997). Additionally, the party seeking the reduction in child support bears the burden of showing its reduction in income was not the result of bad faith. *E.g.*, *Mittendorff v. Mittendorff*, 133 N.C. App. 343, 344, 515 S.E.2d 464, 466 (1999); *see King v. King*, 153 N.C. App. 181, 186, 568 S.E.2d 864, 866-67 (2002) (concluding the party moving for a reduction in her child support obligation failed to meet her burden of establishing her reduction in income was the result of good faith).

This Court has previously noted specific examples of bad faith that justify imputing income to a party, including:

> (1) failing to exercise his reasonable capacity to earn, . . . (3) acting in deliberate disregard for his support obligations, . . . (6) deliberately not applying himself to his business, . . . or (8) intentionally leaving his employment to go into another business.

*Wolf*, 151 N.C. App. at 526-27, 566 S.E.2d at 518-19. In *Wolf*, this Court affirmed the denial of the father's motion to reduce his child support obligation where the trial court determined the father's unemployment was voluntary and amounted to a " 'conscious and reckless disregard' " for his support obligation. 151 N.C. App. at 527, 566 S.E.2d at 519 (emphasis omitted). In *McKyer*, this Court affirmed the trial court's decision to impute income to the father where the father, after retiring from a career in professional football, took a job working one day per week, presented no evidence that he could not work more hours at the same job, and paid less than one-third of the ordered child support. 179 N.C. App. 132, 136, 147, 632 S.E.2d 828, 830, 837 (remanding in part for further findings as to the proper amount of income to be imputed). Similarly, in *Roberts v. McAllister*, we affirmed the imputation of income to the mother where she was voluntarily unemployed, had no intention of finding employment, and, though she had substantial financial assets, made negligible contributions to the support of her children. 174 N.C. App. 369, 379-80, 621 S.E.2d 191, 198-99 (2005) (reversing and remanding in part for findings to support

amount of child support awarded), *appeal dismissed*, 360 N.C. 364, 629 S.E.2d 608 (2006). There, the trial court concluded the mother's actions evidenced a " 'naïve indifference' " to her children's needs and amounted to a deliberate disregard to her child support obligation. *Id.* at 379, 621 S.E.2d at 198; *cf. Pataky v. Pataky,* 160 N.C. App. 289, 307-08, 585 S.E.2d 404, 416 (2003) (holding there was insufficient evidence to support the trial court's finding of bad faith by the father who quit his job in order to return to school where the father created a plan to meet his child support obligations while unemployed and exceeded his custody obligations prior to the mother filing a complaint seeking additional support), *aff'd in part, rev. dismissed in part per curiam*, 359 N.C. 65, 602 S.E.2d 360 (2004).

In the present case, we agree with the trial court's conclusion that there is no evidence to suggest plaintiff intentionally reduced his income to avoid his child support obligation. However, the evidence in the record does not support the trial court's finding that there was "no evidence" of bad faith or an intentional disregard of his child support obligation. On the contrary, the only evidence on this point was plaintiff's testimony that he acted without considering his ability to meet his child support obligation. When plaintiff was asked if he considered his child support obligation before quitting his job at EMC, without having secured other employment, he testified that his *only* consideration was his obedience to Jesus Christ.

While we do not question the sincerity of plaintiff's religious beliefs, we cannot equate such justification for his actions with good faith as it pertains to his financial obligations for his children. *See Shippen v. Shippen*, ___ N.C. App. ___, ___, 693 S.E.2d 240, 244 (2010) (concluding the appellant's voluntary reduction income, while based on his sincerely-held religious beliefs, could not excuse him of his duty to comply with a valid child support order). Thus, the trial court erred in concluding that plaintiff acted "in good faith, without a disregard for his child support obligation," and its order is reversed.

Reversed.

Judges STEELMAN and McCULLOUGH concur.